UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-106(2) (NEB/DTS)

| | |
|---|---|
| UNITED STATES OF AMERICA,                    )<br>                                                                      )<br>                          Plaintiff,                     )<br>                                                                      )<br>          v.                                                        )<br>                                                                      )<br>STEPHEN OSEGHALE,                             )<br>a/k/a LARRY ADISA,                                 )<br>a/k/a STEVEN BOYEGA,                           )<br>a/k/a ERIC ADE DAVIDSON,                    )<br>a/k/a MICHAEL DAVIDSON,                    )<br>a/k/a PERRY LAWALL,                              )<br>a/k/a TOBY WILLIAMS,                            )<br>                                                                      )<br>                          Defendant.                 ) | **GOVERNMENT'S POSITION WITH RESPECT TO SENTENCING** |

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Kimberly A. Svendsen, Assistant United States Attorney, submits this memorandum in connection with the sentencing of defendant Stephen Oseghale.

On November 3, 2021, Oseghale pled guilty to conspiring with others to defraud individuals and businesses by engaging in online scams, including business email compromises and online romance scams. The portion of the conspiracy attributable to Oseghale's conduct included more than $625,000 in fraud proceeds and resulted in substantial financial hardship to five or more victims. The government seeks a sentence at the bottom of the applicable Sentencing Guidelines range, which is appropriate to the criminal conduct to which Oseghale pled guilty, including the serious breaches of victims' trust and the dollar amount associated with Oseghale's conduct.

## Oseghale's Criminal Conduct

From 2017 through 2019, Stephen Oseghale played an important role in a scheme to defraud businesses and individuals of their money using the Internet. Oseghale worked with co-conspirators who posed as people who they were not, gained the victims' trust, and exploited that trust to steal their money. In total, Oseghale's conduct is directly tied to at least $625,432 in fraud resulting in substantial financial hardship to five or more victims. (PSR ¶ 30.)

Oseghale and his co-conspirators used the Internet to steal money from victims primarily through two methods—business email compromises and romance scams. A business email compromise is an online scam in which the perpetrator poses as a known or trusted person, typically a vendor of the victim company, and provides the victim company with instructions to wire funds to pay the vendor for goods or services. (*Id.* ¶ 11.) In reality, the wiring instructions are connected to a bank account controlled by the scammers. For example, in 2017, members of Oseghale's conspiracy caused a Minnesota company to wire approximately $838,000 to an account they controlled. (*Id.* ¶¶ 22-24.)

To carry out a romance scam, the co-conspirators pursue fraudulent online romantic relationships with victims to gain their trust and then persuade the victims to send them money for various false purposes, such as claimed legal fees, costs for businesses, or other purported financial needs. (*Id.* ¶ 12.) For example, in 2018, a victim in Texas believed she was in a romantic relationship with a person named "David Palmer," who claimed to be a building contractor in Ireland. (*Id.* ¶ 26.) "Palmer" requested the victim to send money for him to pay his employees so he could come to the United States and marry her. (*Id.*)

This victim ultimately sent $40,000 to an account Oseghale controlled using the false identity "Eric Davidson." (*Id.*) Similarly, in 2017 and 2018, a victim in Kansas believed she was in a romantic relationship with a person named "Donald Hudhes," who requested money from the victim to help him complete his work abroad and then come to the United States to marry her. (*Id.* ¶ 27.) As part of this scheme, the victim sent $10,000 to an account Oseghale controlled using the false identity "Steven Boyega." (*Id.*)

As part of his role in the scheme, Oseghale obtained false identification documents, including foreign passports and driver's licenses, with the assistance of his co-conspirators. (Pl. Agr. ¶ 2(c).) Oseghale used these false identification documents to open bank accounts at various banks in the United States. (*Id.*) He then directed co-conspirators to transfer proceeds of online romance scams and business email compromises to these bank accounts that Oseghale controlled. (*Id.* ¶ 2(d).) Oseghale then diverted these funds to his own use and that of his co-conspirators. (*Id.*) Oseghale used means of identification of real people that he obtained from his co-conspirators to facilitate the transfer of the fraudulently obtained funds. (PSR ¶ 20.) Oseghale typically retained between 10 and 15 percent as a fee for funneling money in furtherance of the conspiracy. (*Id.* ¶ 21.)

## The Presentence Investigation Report

Both parties agree with the facts and the Guideline calculations contained in the PSR. The PSR correctly calculated Oseghale's total offense level as 26 and his criminal history category as I. Oseghale's offense level includes a 14-level enhancement because the loss amount attributable to him was more than $550,000 but less than $1,500,000, a 4-level enhancement because the offense caused substantial financial hardship to five or more

victims, a 2-level enhancement because a substantial part of the scheme was committed from outside the United States and the offense involved sophisticated means, and a 2-level enhancement because the offense involved the production or trafficking of any unauthorized access device or counterfeit access device, and the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification, including fraudulent passports and driver's licenses.  (PSR ¶ 39.) Oseghale's offense level also includes a three-level reduction for acceptance of responsibility. (PSR ¶¶ 46-47.)

As a result of Oseghale's total offense level of 26 and criminal history category of I, plus the mandatory consecutive 24-month sentence applicable as a result of Oseghale's guilty plea to aggravated identity theft in Count 13, the undisputed advisory Guidelines range is 63 to 78 months' imprisonment, plus 24 months. (*Id.* ¶¶ 98-99.)

## The Appropriate Sentence

Online scams like those perpetrated by Oseghale and his co-conspirators prey on the trust of individual victims and result in substantial harm beyond the financial losses they cause.  Given the number of online accounts, bank accounts, false identities, and overseas connections involved, these crimes are often difficult to investigate and even more difficult to prosecute.  A significant sentence of imprisonment is necessary to reflect the seriousness of the offense, to provide Oseghale with just punishment, and to deter Oseghale and others from committing similar offenses in the future.

This was not a one-time mistake.  Oseghale made the decision on many different days over the course of 2 years to participate in a large-scale scheme to steal money from

people who believed they were sending money to someone they trusted. Oseghale was required to engage in a substantial amount of planning to do so—he obtained false passports and driver's licenses from Canada and the United Kingdom in at least four different names. He used those fraudulent documents to open a variety of bank accounts into which the scammers could direct their proceeds. And, he kept a 10 to 15 percent fee for using his accounts to funnel those proceeds.

By the same token, Oseghale's culpability is less than that of his co-defendant, Olumide Obidare. For example, unlike Obidare, Oseghale withdrew from the conspiracy more than a year before law enforcement arrested the co-conspirators. As a result of Obidare's lengthier participation in the conspiracy, he is responsible for more than $2 million in fraud loss, as compared to Oseghale's $625,000. Oseghale has also taken full responsibility for his fraudulent conduct.

Taking into consideration the Sentencing Guidelines, as well as the other factors required to be considered under § 3553(a), the United States respectfully suggests that a sentence of 87 months' imprisonment—the bottom of the appropriate applicable Sentencing Guidelines range—appropriately reflects the seriousness of Oseghale's crime while taking into account his mitigating circumstances, promotes respect for the law, provides a just punishment, and protects the public from further online scams by Oseghale and others.

Finally, it is undisputed that the Mandatory Victim Restitution Act applies and that the total amount of restitution to be ordered in this case is $625,432.27. (PSR ¶ 111.) In

addition to any sentence of imprisonment, the government requests that the Court order Oseghale to pay restitution to the victims of his fraud scheme.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court sentence the defendant, Stephen Oseghale, to a sentence of imprisonment at the bottom of the appropriate applicable Sentencing Guidelines range and to pay restitution in the amount set forth in the PSR.

Dated: July 26, 2022    Respectfully Submitted,

ANDREW M. LUGER
United States Attorney

*/s/ Kimberly A. Svendsen*

BY:  KIMBERLY A. SVENDSEN
Assistant U.S. Attorney